DECISION
These matters are before the Court on appeals from the North Smithfield Probate Court. Case Number PP 94-3778 is an appeal by the guardian William Perreault (hereinafter referred to as Perreault), from an order of the Probate Court approving the sale of real estate to Joseph and Corey Coia. Cases PP 96-5520 and PP 95-5618 are appeals from the Probate Court by Perreault regarding the removal of a lien on the real estate in question and the denial of his guardian fees. (After trial a motion for a judgment as a matter of law in favor of the Estate of Aime Lagasse (hereinafter referred to as "Estate") was granted by this Court in PP 96-5520 regarding the removal of a lien on the real estate in question.) PP 2000-1025 is an appeal from the Probate Court denying attorney fees to Luc LaBrosse. (Prior to trial this mater was settled). PP 2001-1181 is an appeal from the denial of a claim by the administratrix of the estate for the attorney fees of Robert Larder, Esquire, (hereinafter referred to as Larder), on behalf of Regina LaChance (hereinafter referred to as LaChance).
 FACTS
In December of 1989, Perreault was notified that his uncle, Aime Lagasse (hereinafter referred to as Lagasse), was in need of someone to make decisions for him. After conferring with Lagasse's siblings, including LaChance, Perreault sought to be named Lagasse's guardian in the North Smithfield Probate Court. In January of 1990 Perreault was appointed guardian and then proceeded to care for Lagasse first while a patient at the Friendly Home and then later in Perreault's home. During that period, Perreault and his wife, Elen Perreault, cared for Lagasse on a continuous basis eventually taking him with them to Florida during the winter months. This continued until sometime in 1993 when Lagasse's condition deteriorated resulting in Perreault returning Lagasse to Rhode Island and placing him in the Veterans' Home in Bristol.
During this approximately three-year period, besides the daily care of Lagasse by both Perreaults, Mr. Perreault cared for Lagasse's estate maintaining his real estate, taking care of his financial affairs and seeking a non-service connected disability pension for him from the Veterans Administration. During this same period Perreault sought relief from the North Smithfield Probate Court first by seeking a mortgage in the amount of $130,000 on Lagasse's real estate to insure payment of future services by Perreault and later seeking to buy said real estate for $140,000 with a payment of $31,000 and the forgiveness of Mrs. Perreault's bill for services rendered as well as his bill for services as a guardian. After Lagasse's placement at the Veterans Home, and since Perreault lived in Florida for five or six months of the year, his contacts with Lagasse were necessarily limited. He did, however, continue paying Lagasse's bills and expenses and visited with him while he was in Rhode Island. Shortly before Lagasse's death Perreault withdrew as guardian.
During the period of the guardianship, Mrs. Perreault received Probate Court approved compensation from the Estate in the total amount of $63,500 for her care of Lagasse during the period that he lived with the Perreault's. The Probate Court approved a fee of $25 per hour for Perreault's work as guardian and a partial fee to him of $5,500 for work performed by the guardian to March 1991. (He actually received $2,000 of this amount.) Additionally, Perreault submitted a bill for his remaining services as guardian in an amount of $70,152.66 plus expenses of $8,766. The denial of this bill is the basis of PP 96-5518.
The matter came before this Court for a trial on the appeal of the various Probate Court petitions and after four days of testimony and the presentation of numerous exhibits, the Court continued the matter for the filing of memoranda of law and proposed findings of fact. The Court takes this opportunity to thank the attorneys involved for their diligent and professional handling of the matter before it.
 STANDARD OF REVIEW
The Rhode Island General Laws § 33-23-1(d) provides that when reviewing a contested Probate Court order or decision:
 "An appeal under this chapter is not an appeal on error but is to be heard de novo in the superior court. By agreement of the parties, the record of proceedings, including the certified documents and the transcript (if any) from the probate proceedings, may be introduced in the superior court without further authentication. If the record of proceedings is introduced in the foregoing manner, the findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions. Nothing herein shall preclude a witness who testified at the probate court proceeding from testifying at the superior court hearing, however, the transcript of such probate court testimony may be used for any evidentiary purpose, consistent with the Rhode Island rules of evidence."
This section mandates that the Superior Court make a de novo determination of those portions to which the appeal is directed, and the finding of fact and/or decision of the Probate Court may be given as much weight and deference as the Superior Court deems appropriate. The Superior Court justice, however, shall not be bound by any such findings or decisions. Estate of Gervais, (Silverstein, J., R.I. Superior Court No. 99-2083, 1999).
 ARGUMENTS PRESENTED
The Estate and Larder, on behalf of LaChance, argue that if Perreault is entitled to any guardian fee it should be limited either to the 5 percent figure set forth in§ 31-16 of the Rhode Island General Laws dealing with Veterans' Estates or that it should be considered along with any compensation given to Mrs. Perreault so that no further guardian fees would be necessary. Additionally, the Estate, Larder and LaChance argue that Perreault's clear conflict in the handling of the Estate bars him from receiving any further recovery of fees and/or that the amount sought of $70,152.66 is clearly not proportionate to the total value of the estate. Additionally, they argue that the failure of Perreault to notify the Veterans Administration of the various court proceedings as required by law should serve as a bar to any recovery of fees by the guardian.
Perreault argues that the original court order awarding him a fee at the rate of $25 per hour was never objected to; that his services to the Estate as guardian were separate and distinct from the work performed by his wife; that his bill for $70,152.66 is reasonable in light of the fact that he generated considerable revenue for the Estate and that but for his efforts Lagasse never would have received veterans' benefits. He also contends that the 5 percent guardian fee cap set forth in G.L. §33-16-20 should apply only to revenues received directly from the Veterans Administration and not to any other assets that might have been in the ward's possession during the period of the guardianship. He also contends that notice was given to the Veterans Administration of all proceedings and that the fact a waiver stamp was never placed on the court documents does not mean that the Veterans Administration was without notice.
Larder, in his claim for attorney's fees, argues that but for LaChance interceding at the Probate Court much of the Estate would have been wasted by improper and unreasonable fees as well as sale of the real estate for less than fair market value. He contends that his fee of $150 an hour has the support of various attorneys as well as Perreault's attorney, and that the number of hours reflected in the bill are fair and reasonable.
Perreault in response argues that, while not questioning the $150 per hour rate, Larder could have avoided much of the work that he performed and that Larder should not be compensated for any billing for time spent either in the Superior Court or the Supreme Court.
 DISCUSSION
A. Perreault's Guardian Fee Case No. PC-96-5518
This case brings to light one of the unfortunate flaws of human nature wherein one originally begins to do work based solely upon generosity and good will but after being placed in the fiduciary position of handling another's money is tempted by that money to enrich himself beyond what one would consider reasonable compensation. When no one else would care for Aime Lagasse, Perreault stepped forward. As indicated in a prior deposition, "he never agreed to take fees" for his services. (Deposition of 9/13/93, Re: Estate of Aime Lagasse.) Nevertheless, shortly after becoming guardian he began, what appears to this Court, to seek from the estate of Lagasse moneys or assets that clearly exceeded the value of his services. Perreault had been retired since 1980 due to an injury resulting in a Workers' Compensation claim. Despite this fact, he still managed to run a side construction business. Upon taking over the guardianship, his wife was certified to become the caregiver for Aime Lagassee, resulting in her receiving $63,500 for services rendered to Lagasse over a period of approximately three years. More significantly, within a very few months of his being appointed guardian, he sought and received permission to mortgage Lagasse's real estate to him for $130,000, in order to secure anticipated guardian fees that might be due him in the future. Later, he sought to buy the real estate of Lagasse for $140,000 of which he would pay $31,000 in cash and forgive the approximate $108,000 owed to him and his wife for services rendered to Lagasse. While this Court is not positive as to Perreault's ultimate intent, the facts indicate that Perreault was in a blatant conflict with the Estate and was attempting to bill the Estate far more than his services would be worth, especially in light of the overall size of the Estate.
In Cheetham v. Cheetham, 114 R.I. 466, (1975) our Supreme Court stated that it is appropriate to award fees to a guardian for services performed when there is no finding of a breach of fiduciary duty. In Horton v.Maine, 22 R.I. 126 (1900), the Court held that "the interest of the mortgagee are adverse to those of the guardian of the mortgagor, hence when the mortgagee is appointed guardian of the mortgagor his relation as guardian is adverse to that of the mortgagee. To permit a mortgagee to exercise the power of sale in a mortgage given by the ward would deprive the estate of the ward of the very protection which it is the purpose of the guardianship to afford. While at the same time a temptation might be presented to the mortgagee to conduct the sale in his own interest rather than in the interest of the ward and to purchase the property at a sacrifice directly or indirectly for his own benefit. Such a liability the law will not tolerate and therefore it does not permit the same person to occupy two antagonistic relations from which possible conflict of duty may arise." And as Justice Cardoza so vividly expressed
 "Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties * * * not honesty alone but the punctillo of an honor the most sensitive * * * the standard of behavior. As to this, there has developed a tradition that is unbending and inveterate." Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). See also, Nonnast v. Northern Trust Co. (1940), 374 Ill. 248, 270, 29 N.E.2d 251.
In review of the bill for services rendered submitted by Perreault, it is clear that many of the times referenced are unsubstantiated and in some cases simply "taking the figures out of my hat." The Court was especially drawn to many of the expenses listed on the petition to substantiate its conclusion of both conflict and proportionately unreasonable billing. Perreault charged $1,500 to store Lagasse's personal effects in his garage at a fee of $15 a week. He charged $960 to cut grass at Lagasse's house. He charged $800 for the round trip to and from Florida. He charged $600 for Lagasse's share of a vacation in 1992 in Florida. For someone who started out as the guardian of his "favorite uncle" because no one else would do it, Perreault soon turned into the astute businessman making sure that he was compensated for every last dime expended. This should not be the function of a person placed in the fiduciary role of guardian of an incompetent person and his estate.
Likewise, there is no proportionality between Perreault's fees and the gross estate. While the Rules of Professional Conduct do not set a fee for a guardian's work on an estate, it is not uncommon to see them being a percent of less than 10 percent. [for example, see infra § 33-16.] Here the original estate was estimated at less than $200,000, excluding any income during its course, or expenses paid to Mrs. Perreault. The purported fee, plus those paid previously, was more than one-third of that amount. Nothing about the nature of the Estate would warrant a payment of anything near that figure.
Section 36-16 of the General Laws addresses the issue of compensation of guardians for veterans' estates. Both sides would agree that at the very least those funds received directly from the Veterans Administration are subject to a 5 percent guardian fee. The Estate and Larder would argue that this fee applies to all assets of a veteran's estate, not only those received directly from the Veterans Administration. Perreault argues that such an interpretation would be unreasonable, especially in those cases where the ward had substantial assets beyond funds received from the Veterans Administration. In accordance with § 33-16-2, an estate is defined as "income on hand and assets acquired partially or wholly with income." Income is defined as "money received from the Veterans Administration and revenue or profit from property wholly or partially acquired therewith." This Court concludes that this language should be narrowly construed limiting it to moneys received from the Veterans Administration or "profit from property . . . acquired therewith" and not to any other money or assets that the ward might have. As stated in § 33-16-18 of the General Laws, if the guardian is accountable for property from sources other than the Veterans Administration, he shall be entitled to compensation as provided by law.[1]
Even if there were no conflict found, the compensation received by Mrs. Perreault must be viewed as payments to the guardian for the team care they rendered to Lagasse. 38 U.S.C.S. section 5502(a)(2) supports the proposition that "a commission for guardian fees may not be authorized for a fiduciary who receives any other form of remuneration or payment in connection with rendering fiduciary services on behalf of a beneficiary." During the trial Perreault testified that he and his wife were a team in rendering care for Lagasse. Up to this point, Elen Perreault was earning $7.20 an hour doing basically unskilled work. While the first month or so of care may have been difficult, photos and travel records would indicate that for most of the period in question Lagasse was more like an elderly parent who needed care and attention but not 24 hours a day of bedside vigil. Perreault acknowledged sharing some of these duties. Elen Perreault received $63,500 from the guardian for her caretaker services. The amount was deposited in a joint account of William Perreault and Elen Perreault. If any additional fees were due Perreault, certainly they would have been satisfied by these payments to his wife.
B. Larder's Attorney's Fee Case No. PP 00-1181
The issue of entitlement to fees by an interested party was determined by our Supreme Court in this very case where the Supreme Court stated:
 "The single issue presented in this appeal is whether a probate court may award counsel fees to someone legally interested in the estate of a decedent or incompetent and who has instituted or intervened in a suit or probate proceeding that the probate judge finds to have been necessary for the protection of the particular probate estate.
 We conclude that G.L. 1956 § 33-18-19 vests the Probate Court with jurisdiction to award counsel fees for services rendered to the estate of decedents or incompetents." In re Estate of Aime Lagasse, 723 A.2d 792
(R.I. 1998).
In regard to the petition of Larder for his attorney's fees for services rendered to LaChance, the Court notes, again, that the hourly rate of $150 was never objected to, and that, but for LaChance becoming involved in this matter, a $70,000 fee could have been awarded to Perreault and the real estate might have been wasted. Additionally, the expenses charged to the Estate by the guardian could have been paid. Based on the holding in Colonial Plumbing Heating Supply Co.,[2]
this Court has reviewed Larder's bill in detail and finds nothing in it to indicate that it is unreasonable. In fact the bill reflects various entries for which no charge was made. Additionally, at trial Larder corrected the bill to reduce it by 11.4 hours thus leaving a total bill of 126.6 hours for the first petition and 95.6 hours for the second petition. Based on the time and labor required, the novelty and difficulty of the questions involved, the amount involved and the results obtained, the fees of Attorney Larder, including those before this and the Supreme Court, are reasonable.
 FINDINGS OF FACT AND CONCLUSION OF LAW
As to Perreault's Guardian Fee PP 96-5518
1. In December 1989, Perreault was informed that his uncle, Lagasse, was in need of a guardian, and in January 1990 Perreault was appointed without objection.
2. Over the next three years Perreault cared for both the personal and financial needs of Lagasse, including applying for a veteran's pension for Lagasse.
3. During this time Elen Perreault also cared for Lagasse and was compensated in the amount of $63,500.
4. Once Lagasse went into the Veterans' Home in 1993 and after the fire to his home, there was a marked decrease in the time the Perreaults' spent on Lagasse's affairs.
5. Shortly after being appointed guardian, Perreault received permission from the North Smithfield Probate Court to mortgage Lagasse's real estate to him to secure payment of future guardian fees due Perreault, and later sought to buy said real estate for $140,000 with a payment of $31,000 and the forgiveness of Mrs. Perreault's bill for services rendered, as well as his bill for services as guardian.
6. Subsequently, Perreault also received permission from the Probate Court to charge $25 per hour for is services as guardian, and was granted an interim fee of $5,500 of which $2,000 was actually paid.
7. Perreault has paid the real estate taxes on Lagasse's property from his own pocket over the past five years.
8. Perreault and his wife treated the $63,500 received by Mrs. Perreault for her care of Lagasse as jointly owned funds.
9. Pursuant to 38 USCS § 5502(a)(2), in those cases wherein a fiduciary is appointed for a ward who is a beneficiary of the Veterans Administration, the Court will deny payment of fees to a fiduciary who has received any other form of remuneration or payment in connection with rendering fiduciary services on behalf of the beneficiary.
10. The Court concludes Mr. Perreault received remuneration in the form of $63,500 paid to Mrs. Perreault during the period of 1990 through 1994, and as a consequence thereof is entitled to no further payment for his fiduciary services.
11. Section 33-16-20 of the General Laws sets a cap of a 5 percent guardian fee on any veteran moneys received from the Veterans Administration and revenue or profits from property wholly or partially acquired therewith. This cap does not apply to any other property acquired from sources other than the Veterans Administration.
12. Under § 33-16-20, the failure to affix a waiver stamp to pleadings can only be asserted by the Veterans Administration and the parties are without standing to assert it on behalf of said Administration.
13. Perreault's obtaining of a mortgage on Lagasse's real estate to secure future guardian fees; his attempt to purchase said real estate by paying $31,000 in cash with a credit for the balance of $108,000 for his wife's fees for caring for Lagasse and his guardian fees; and the many unsubstantiated charges in his bill and expenses, sets forth a clear conflict of interest with the estate on his part which must bar his recovery of further guardian fees.
14. Beside being unverified during trial, the expenses submitted by Perreault are indicative of his self interest and should not be reimbursed except for the real estate taxes he has voluntarily paid over the last five years.
15. The $7,500 paid by Perreault to Attorney McBurney is a personal expense that should not be reimbursed by the estate.
16. Since the original guardian fee of the North Smithfield Probate Court was never objected to, Perreault shall be paid the balance of that fee of $3,500.
17. No additional guardian fees shall be awarded to William Perreault, except that the Estate shall reimburse him for all funds he has paid to the Town of North Smithfield for municipal taxes upon the real estate of Lagasse plus interest.
As to Robert Larder's Attorney's Fees PP 00-1181
18. Pursuant to § 33-18-19 of the General Laws of the State of Rhode Island, 1956 as amended, the Court may award counsel fees to someone legally interested in the estate of a decedent or incompetent, and who has instituted or intervened in a suit or probate proceedings that have been necessary for the protection of the particular probate estate.
19. Regina LaChance, represented by Robert H. Larder, Esquire, was an intervener before the Probate Court of the Town of North Smithfield, as well as in the Superior Court of Providence County in the Estate of Aime Lagasse.
20. The services performed by Robert H. Larder, Esquire, the attorney for Regina LaChance, as intervener before the Probate Court of the Town of North Smithfield as well as intervener in the Superior Court of Providence County, were necessary to protect the assets of the Ward of the Estate of Aime Lagasse.
21. The fees for the professional services provided by Robert H. Larder, Esquire, should be paid by the Estate of Aime Lagasse rather than by Regina LaChance.
22. The said services performed by Robert H. Larder, Esquire during the period of August 1991 through November 1998 totaled 221.60 hours and said services were necessary for the protection of assets of the Ward and that $150 per hour is fair and reasonable compensation for his services.
23. The Estate shall pay Larder $33,240 as attorney fees for his representation of LaChance.[3][4]
Counsel shall prepare an Order for entry in accordance with this decision.
[1] The parties agree that notice was sent to the Veterans Administration of court proceedings. The fact that no waiver stamp was placed on them as required by law is of little concern especially since the Veterans Administration has not sought to enforce it in this Court. This Court finds that the parties do not have standing to assert a right belonging to the Veterans Administration.
[2] "A trial judge determines the reasonableness of an attorney's fee from the following factors:
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 (3) The fee customarily charged in the locality for similar legal services.
 (4) The amount involved and the results obtained.
 (5) The time limitations imposed by the client or by the circumstances.
 (6) The nature and length of the professional relationship with the client.
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 (8) Whether the fee is fixed or contingent."
Colonel Plumbing Heating Supply Co. v. Contemporary Const. Co.,Inc., 464 A.2d 741, 743 (R.I. 1983).
[3] At trial, Larder testified that his bill was to be reduced by 11.4 hours. In the event the above sum includes those hours, it should be amended accordingly.
[4] In the case of Joseph Coia and Corey Coia v. Esatte of AimeLagasse, (PP94-3778), the Court will defer decision pending the presentation of further testimony including appraisals of the real estate in question.